IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARCOS MONTES**<br>410 Cook Street<br>Alexandria, VA  22314<br><br>**On behalf of himself and all others similarly situated,**<br><br>　　　**Plaintiffs,**<br><br>　　　　v.<br><br>**JANITORIAL PARTNERS, INC.**<br>5400 Backlick Woods Court<br>Springfield, VA 22151<br><br>**RAY PARK**<br>5400 Backlick Woods Court<br>Springfield, VA 22151<br><br>**GEOFF OGDEN**<br>5645-P General Washington Drive<br>Alexandria, VA 22312<br><br>**FRANKLIN CONDEZO**<br>5645-P General Washington Drive<br>Alexandria, VA 22312<br><br>**and**<br><br>**ELVIS CONDEZO**<br>5645-P General Washington Drive<br>Alexandria, VA 22312<br><br>　　　**Defendants.** | Case No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

　　　Plaintiff Marcos Montes ("Plaintiff"), through counsel and on behalf of others similarly situated, for this collective and class action Complaint, hereby alleges as follows:

## NATURE OF THE ACTION

　　　1.　　Plaintiff individually and on behalf of others similarly situated, bring this collective and class action against Defendants Janitorial Partners, Inc., Ray Park, Geoff Ogden,

Franklin Condezo, and Elvis Condezo (collectively, "Defendants") to redress violations of federal and District of Columbia law that occurred during the course of Plaintiff's employment with Defendants. By their actions and omissions alleged herein, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); the D.C. Minimum Wage Law, D.C. Code Ann. §§ 32-1001 *et seq.* ("DCMWL"); the D.C. Payment and Collection of Wages Law, D.C. Code Ann. §§ 32-1301 *et seq.* ("DCPCWL"); and the regulations promulgated thereto, D.C. Mun. Regs. tit. 7, §§ 900 *et seq*. Plaintiffs seek back pay in the form of wages and/or overtime wages for labor and services rendered on Defendants' behalf, liquidated damages, attorneys' fees, costs, and expenses, and any other legal or equitable relief that the Court deems proper to redress Defendants' unlawful actions.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Count I pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Counts I and II, which arise under District of Columbia law, pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

4. This Court has personal jurisdiction over Defendants because Defendants have substantial, continuous, and systematic contacts with the District of Columbia and a substantial part of the actions and omissions alleged herein occurred in the District of Columbia.

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b) because a substantial part of Defendants' actions and omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

### Plaintiff

6.      Plaintiff Marcos Montes resides in Alexandria, Virginia.  He has worked for Defendants throughout the Washington, D.C. metropolitan area for approximately two-to-three years.

7.      This Complaint is brought as a collective action pursuant to 29 U.S.C. 216(b), on behalf of Plaintiff and all other persons who are or have been employed by Defendants.

8.      The members of the class are similarly situated because they are all subject to Defendants' common policy and practice, implemented throughout its lines of business, of exempting all employees from the protections of the FLSA, and of willfully failing to properly record hours worked and pay wages worked by employees.

9.      This action is a collective action pursuant to the statutory requirements of the FLSA, 29 U.S.C. 216(b); and The District of Columbia Wage Payment and Wage Collection Act, D.C. Code 32-1308(a).

10.     Consents to join the action have and continue to be executed by individuals who are similarly situated.

### Defendants

11.     Defendant Janitorial Partners, Inc. ("JPI") is a Virginia corporation with its principal place of business in Alexandria, Virginia.  Upon information and belief, JPI provides janitorial services in residential apartment and condominium buildings in the District of Columbia and throughout the District of Columbia metropolitan area.

12.     JPI is an enterprise engaged in interstate commerce.  Upon information and belief, JPI has annual business volume in excess of $500,000.

13. Defendant Ray Park is the President and Chief Operating Officer of JPI, and at all relevant times was an owner, agent, and/or principal of JPI with both the actual and apparent authority to bind and set wage and hour policies and practices for JPI.

14. Defendant Geoff Ogden is the Vice-President of Sales & Marketing for JPI responsible for JPI's operations and sales, and at all relevant times was an owner, agent, and/or principal of JPI with both the actual and apparent authority to bind and set wage and hour policies and practices for JPI.

15. Defendant Franklin Condezo is the General Manager of JPI, and at all relevant times was an owner, agent, and/or principal of JPI with both the actual and apparent authority to bind and set wage and hour policies and practices for JPI.

16. Defendant Elvis Condezo is the Operations Manager of JPI, and at all relevant times was an owner, agent, and/or principal of JPI with both the actual and apparent authority to bind and set wage and hour policies and practices for JPI.

### COLLECTIVE AND CLASS ACTION CLASSES

17. This action is brought individually and as a collective action pursuant to 29 U.S.C. § 216(b) by Plaintiff, who worked as a janitor for JPI, on behalf of himself and all other similarly situated non-exempt employees who performed janitorial duties on behalf of Defendants at any time between March 2003 and the date of the final disposition of this action (the "Collective Action Period").  Together, these individuals shall be referred to as the "Collective Action Members."

18. This action is also brought as a class action pursuant to Fed. R. Civ. P. 23 and an opt-in action pursuant to D.C. Code § 32-1012(b) by Plaintiff Marcos Montes on behalf of himself and all other non-exempt employees who performed janitorial duties on behalf of Defendants at worksites in the District of Columbia at any time between March 2003 and the

4

date of the final disposition of this action (the "Class Period"). Together, these individuals shall be referred to as the "Class Members." Plaintiff Marcos Montes, individually and on behalf of the Class Members, alleges claims pursuant to the DCMWL, the DCPCWL, and the regulations promulgated thereto.

## FACTUAL ALLEGATIONS

### Factual Allegations Common to All Claims

19. Defendant JPI is in the business of providing janitorial services to residential apartment and condominium buildings in the D.C. metropolitan area.

20. Defendants managed Plaintiff, Collective Action Members, and Class Members and controlled the terms and conditions of their employment. Throughout the Class and Collective Action Periods, Defendants had and exercised the power to control Plaintiffs', Collective Action Members', and Class Members' work schedules and locations, to assign their job tasks and direct the means of carrying them out, to provide them the instruments and materials to perform the work, to supervise and evaluate their job performance, and to hire and/or fire Plaintiffs, Collective Action Members, and Class Members.

21. Defendants misclassified Plaintiff, Collective Action Members and Class Members as supervisors to avoid paying their hours worked and overtime wages.

22. Defendants Ray Park, Geoff Ogden, Franklin Condezo, and Elvis Condezo, on behalf of Defendant JPI, authorized, assented to, or were aware of the work performed by Plaintiffs, Collective Action Members, and Class Members for the benefit of Defendants.

23. Defendants Ray Park, Geoff Ogden, Franklin Condezo, and Elvis Condezo have decision-making authority over JPI's payroll and employment policies and practices, including, but not limited to, the employees' rate of pay, overtime hours, pay dates, method of

payment, the maintenance of employee records, authority to hire and fire employees, and the assignment of employees to JPI worksites.

24. Upon information and belief, Defendants have directly benefited from the work of four individuals whom they assigned to work on their behalf in the District of Columbia and the D.C. metropolitan area during the Class and Collective Action Periods. Defendants received payment from their own customers for the work performed for Defendants' benefit.

25. At all relevant times, Plaintiff and Class and Collective Action Members were paid on a salary basis. These payments, however, did not reflect the actual hours worked by Plaintiff or the Class and Collective Action Members because Defendants did not keep accurate time records and/or refused to include compensable time such as preliminary and post work duties and travel time between worksites.

26. Under this payment scheme, Defendants paid the Class and Collective Action Members a flat rate for each two-week pay period even in instances when the Collective Action Members worked in excess of forty hours. Defendants subtracted payment from the Class and Collective Action Members, however, when they worked fewer hours or days than originally scheduled. When emergency janitorial work was necessary, Defendants would assign it to these "salaried" employees to avoid paying employees who were compensated on an hourly basis.

27. At all relevant times, Plaintiff and the Class and Collective Action Members were "non-exempt" employees for purposes of the FLSA and/or the DCMWL.

28. Throughout the Class and Collective Action Periods, Defendants had and have a legal obligation to pay Plaintiff and the Class and Collective Action Members for all work performed and to pay overtime compensation for hours in excess of forty hours each week.

Throughout the Class Period, Defendants also had and have a legal obligation to pay Class Members for maintenance and cleaning of their uniforms.

29.    Despite Defendants' obligations under relevant wage and hour laws and regulations, Defendants intentionally created and implemented a system by which they denied Plaintiff, Collective Action Members, and Class Members all wages owed for each hour worked and one-and-one-half times their regular hourly rate of pay for hours worked in excess of forty hours during each workweek, and denied Plaintiff and Class Members payment for cleaning and maintenance of uniforms.

30.    To this day, Plaintiff, Collective Action Members, and Class Members have not been paid all earned compensation owed them for hours worked during the Class and Collective Action Periods.

31.    Throughout the Class and Collective Action Periods, Defendants issued pay stubs to Plaintiff, Collective Action Members, and Class Members that failed to include, *inter alia*, a statement of the hours worked during the pay period, a statement of gross wages paid separately listing the earnings for overtime and non-overtime hours worked, and an itemization of allowances and deductions from and additions to wages.

32.    For any pay period in which the hours of Plaintiff and the Class and Collective Action Members exceeded 80, rather than pay overtime, Defendants simply omitted any statement of the hours worked from the employees' paystubs.

33.    Upon information and belief, Defendants failed to keep payroll records containing all information required by law.

34. The compensation policies and practices set forth above constitute willful, knowing, and intentional violations of the FLSA, the DCMWL, the DCPCWL, and the regulations promulgated thereto.

**Factual Allegations Specific to JPI's Cleaning Division**

35. JPI has a cleaning division that provides janitorial services inside individual apartments while the apartments are vacant in between tenancies (the "Cleaning Division").

36. Cleaning Division employees work in teams of four. Each team provides janitorial services at multiple buildings in the District of Columbia, Virginia, and/or Maryland on each workday.

37. Upon information and belief, there are approximately twenty-four employees currently working in the Cleaning Division.

38. Each team includes a "Crew Supervisor." Plaintiff and the Class and Collective action members were Crew Supervisors. The Crew Supervisors perform the same janitorial duties alongside the other Cleaning Division employees.

39. In addition, the Crew Supervisors arrive at the JPI office at around 6:30 a.m. and gather all of the cleaning materials and equipment to be used during the workday and load the company trucks with the cleaning materials and equipment.

40. Each Crew Supervisor serves as the driver for his or her assigned team. The Crew Supervisors use JPI-owned vehicles to pick up and drop off the other members of their teams from their homes at the beginning and end of each workday and provide transportation between the worksites during each workday.

41. On information and belief, the Crew Supervisors also report the daily hours worked by each team to Defendant Elvis Condezo. The Crew Supervisors do not have discretion

in reporting the hours worked. Instead, pursuant to Defendants' policies, they are required to report the number of daily hours worked by the team excluding travel time between worksites.

42. If, upon receiving a Crew Supervisor's report of the hours worked by a team, Defendant Elvis Condezo believes that the team has worked too many hours in a given workday, Mr. Condezo does not include the additional hours in the calculation of wages.

43. Plaintiffs kept timesheets reflecting all hours worked by the team members.

44. At the end of each workday, each Crew Supervisor submits to Defendant Franklin Condezo a record of the hours worked by each team.

45. On information and belief, throughout the Collective Action Period, all Cleaning Division employees regularly worked and/or continue to work more than forty hours in a workweek.

46. During each workday, the Crew Supervisors would arrive at the JPI office around 6:30 a.m. to prepare the cleaning materials and equipment and load the company trucks. The Crew Supervisors would also receive a list of apartments assigned to their team for cleaning. The Crew Supervisors would then pick up each team member at his/her home between 7 a.m. and 8 a.m. and drive the Cleaning Division members to the first worksite.

47. The Crew Supervisors would then drive the Cleaning Division members from worksite to worksite during the course of the day. Neither Plaintiffs nor the Cleaning Division members were provided with any breaks, except for the travel time between worksites, and were expected to eat their meals in the vans while traveling.

48. At the end of each workday, the Crew Supervisors would drop the Cleaning Division members off at their homes between 6 p.m. and 8 p.m. in the winter and between 8 p.m. and 10 p.m. in the summer. Accordingly, the Cleaning Division members worked between 10

and 16 hours each workday. Plaintiff and the Class and Collective Action Members then had to return to JPI's Office and unload and store the cleaning equipment. Accordingly, Plaintiff and the Class and Collective Action Members worked between 12 and 18 hours each workday.

49. The Cleaning Division members and all other Cleaning Division employees regularly worked more than 40 hours in a workweek.

50. In a meeting of all Cleaning Division employees in or around November 2010, Nolvia Ramirez Solano, a Cleaning Division employee, asked Defendant Franklin Condezo whether Cleaning Division employees should receive additional pay for their overtime hours. Mr. Condezo informed Ms. Ramirez Solano that Defendants do not pay overtime and that, if she did not like this fact, she could quit.

51. For the entirety of their tenure as employees of Defendants, Defendants failed to pay Plaintiff and the Class and Collective Action Members overtime for their hours worked in excess of forty hours each workweek and, depending on the number of hours worked each week, often failed to pay the federal minimum wage.

52. On information and belief, Defendants knew that the payments they made to the Plaintiffs did not meet the legal requirements under federal law. Defendants therefore showed a willful disregard of their legal obligations toward the Plaintiffs.

53. On information and belief, Defendants failed to pay all Cleaning Division employees the minimum wage mandated by District of Columbia and/or Federal law, failed to pay Cleaning Division employees based in the District of Columbia an additional $0.10 per hour to maintain and clean the uniforms provided to them by JPI, and never paid the Cleaning Division employees overtime for their hours worked over forty hours each workweek.

**EQUITABLE TOLLING**

54. Throughout the Class and Collective Action Periods, Defendants failed to comply with the FLSA and the DCMWL by failing to post notices advising their employees of their rights to minimum wages and overtime pay in a conspicuous and accessible place in every establishment where such employees are employed so as to permit them to observe readily a copy.

55. As a result, any statutes of limitations applicable to the claims of Plaintiffs, Collective Action Members, and Class Members are equitably tolled for the period that Defendants were in violation of their posting obligations.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

56. The collective action that Plaintiffs propose to maintain under the Fair Labor Standards Act, 29 U.S.C. § 216(b), includes all Collective Action Members who were not paid overtime for the hours over forty they worked in any given workweek and/or the minimum wage at any time during the Collective Action Period.

57. During the Collective Action Period, the harms suffered by the Collective Action Members were the same as or substantially similar to those suffered by Plaintiff, in that Plaintiff and the Collective Action Members are and were subject to the same unlawful compensation policies and practices as described in this Complaint.

58. Accordingly, Plaintiff and Collective Action Members are "similarly situated" within the meaning of 29 U.S.C. § 216(b), and are therefore entitled to proceed on a collective basis.

59. Plaintiff believes that there are 2 similarly-situated persons who are or have been employed as non-exempt employees of Defendants performing janitorial services for Defendants and who were not paid the minimum wage and were not paid overtime for the hours

11

over forty they worked in any given workweek during the Collective Action Period. Thus, a collective action is the most efficient mechanism for resolution of the claims of the Collective Action Members.

60. An action under 29 U.S.C. § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by certain individual Collective Action Members may be relatively small, and the expense and burden of individual litigation would make it impossible for such Collective Action Members individually to redress the wrongs done to them. Further, because of the similarity of the Collective Action Members' claims, individual actions would present the risk of inconsistent adjudications, subjecting Defendants to incompatible standards of conduct.

## DCMWL OPT-IN ACTION ALLEGATIONS

61. The opt-in action that Plaintiff proposes to maintain under the DCMWL, D.C. Code § 32-1012(b), includes all similarly-situated Class Members who were not paid minimum wage for hours they worked, were not paid for cleaning and maintenance of their employer-provided uniforms, and/or were not paid overtime for the hours over forty they worked in any given workweek during the Class Period.

62. During the Class Period, the harms suffered by the Class Members were the same as or substantially similar to those suffered by Plaintiff Marcos Montes, in that Plaintiff Marcos Montes and the Class Members are and were subject to the same unlawful compensation policies and practices as described in this Complaint.

63. Accordingly, Plaintiff and Class Members are "similarly situated" within the meaning D.C. Code § 32-1012(b), and are therefore entitled to proceed on an opt-in basis.

64. Plaintiff Marcos Montes believes that there are 2 similarly-situated persons who are or have been employed as non-exempt employees of Defendants who perform(ed)

12

janitorial duties in the District of Columbia during the Class Period. Thus, to the extent that Class Members' claims are not included in the Class Action that Plaintiff Marcos Montes proposes to maintain, an opt-in action is the most efficient mechanism for resolution of the claims of the Class Members.

65. To the extent that the Class Members' claims are not included in the Class Action that Plaintiff Marcos Montes proposes to maintain, an opt-in action under D.C. Code § 32-1012(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by certain individual Class Members may be relatively small, and the expense and burden of individual litigation would make it impossible for such Class Members individually to redress the wrongs done to them. Further, because of the similarity of the Class Members' claims, individual actions would present the risk of inconsistent adjudications, subjecting Defendants to incompatible standards of conduct.

## COUNT I

**(Violation of the FLSA – Plaintiff and the Collective Action Members)**

66. Plaintiff and the Collective Action Members re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

67. Plaintiff and the Collective Action Members are or were employed by Defendants to perform manual labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

68. In violation of 29 U.S.C. § 206(a), Defendants failed and refused to pay Plaintiff and the Collective Action Members the applicable minimum wage for each hour worked.

69. Plaintiff and the Collective Action Members each worked more than forty hours in one or more workweeks within the Collective Action Period.

70. In violation of 29 U.S.C. § 207(a), Defendants failed and refused to pay Plaintiff and the Collective Action Members for overtime at a rate of at least one-and-one-half times the employees' regular rate of pay for hours over forty worked in any given workweek.

71. Defendants' violations of the FLSA were repeated, willful, and intentional. Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

72. Plaintiff and the Collective Action Members have been damaged by said violations of the FLSA.

73. For their violation of the FLSA, Defendants are liable to Plaintiff and the Collective Action Members for all unpaid minimum wage and overtime compensation, plus an additional amount as liquidated damages, and costs and reasonable attorneys' fees incurred in the maintenance of this action.

## COUNT II

**(Violation of the D.C. Minimum Wage Law – Plaintiff and the Class Action Members)**

74. Plaintiff Marcos Montes and the Class Members re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

75. Defendants failed and refused to pay Plaintiff Marcos Montes and the Class Members the required D.C. minimum wage for each hour worked, in violation of Section 32-1003(a)(2) of the DCMWL.

76. Defendants failed and refused to pay Plaintiff Marcos Montes and the Class Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty each week, in violation of Section 32-1003(c) of the DCMWL.

77. Defendants failed to pay Plaintiff Marcos Montes and the Class Members an additional $0.10 per hour in addition to the wages required by the DCMWL for cleaning and maintenance of employer-provided uniforms, in violation of D.C. Mun. Regs. tit. 7, § 908.

78. Defendants' violations of the DCMWL and regulations promulgated thereto were repeated, willful, and intentional.

79. Defendants are liable to Plaintiff Marcos Montes and the Class Members under D.C. Code Ann. § 32-1012(a) and (c), for their unpaid uniform cleaning and maintenance compensation, unpaid minimum wage and overtime compensation, liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT III

**(Violation of the D.C. Payment and Collection of Wages Law – Plaintiff and the Class Members)**

80. Plaintiff Marcos Montes and the Class Members re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

81. Defendants failed and refused to pay Plaintiff Marcos Montes and the Class Members their earned straight and overtime wages in violation of the DCPCWL, Section 32-1301, *et seq.*

82. To this day, Plaintiff Marcos Montes and Class Members have not been paid their full earned straight and overtime wages.

83. Defendants' violations of the DCPCWL were and are repeated, willful, and intentional.

15

84. Defendants are liable to Plaintiff Marcos Montes and Class Members under D.C. Code Ann. § 32-1308, for their unpaid wages, liquidated damages, interest, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class and Collective Action Members, respectfully request that the Court:

A. Declare this Action to be maintainable as a collective action pursuant to 29 U.S.C. § 216(b);

B. Determine the damages sustained by Plaintiff and the Collective Action Members during the Collective Action Period as a result of Defendants' willful and intentional violations of 29 U.S.C. § 207(a), and award unpaid minimum wages and overtime against Defendants in favor of Plaintiff and all Collective Action Members, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law;

C. Declare this Action to be maintainable as a class action pursuant to Fed. R. Civ. P. 23;

D. Declare this Action to be maintainable as an opt-in action pursuant to D.C. Code § 32-1012(b);

E. Determine the damages sustained by Plaintiff Marcos Montes and the Class Members during the Class Period as a result of Defendants' willful and intentional violations of the DCMWL, the DCPCWL, and the regulations promulgated thereto, and award all appropriate damages resulting therefrom to Mr. Montes and the Class Members;

  F.  Award Plaintiff, Collective Action Members, and Class Members their costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees, accountants' fees, investigators' fees, experts' fees, and other associated costs; and

  G.  Grant Plaintiff, Collective Action Members, and Class Members such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all the issues so triable.

Dated:  March 27, 2013

                    Respectfully submitted,

                      /s/ Denise M. Clark  
                    DENISE M. CLARK (420480)  
                    1250 Connecticut Ave., N.W., Ste. 200  
                    Washington, D.C. 20036  
                    P: (202) 293-0015  
                    F: (202) 293-0115  
                    dmclark@benefitcounsel.com

                    *Counsel for Plaintiffs*