UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARCOS MONTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 13-cv-410 (RJL) |
| | ) | |
| JANITORIAL PARTNERS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(September 9, 2015) [Dkt. #24]

FILED
SEP 09 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

On March 29, 2013, plaintiff Marcos Montes ("plaintiff") commenced this collective and class action "on behalf of himself and all others similarly situated" against defendants Janitorial Partners, Inc. ("JPI"), Ray Park, Geoff Ogden, Franklin Condezo, and Elvis Condezo ("defendants"), for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the D.C. Minimum Wage Law, D.C. Code Ann. §§ 32-1001 *et seq.* ("DCMWL"), and the D.C. Payment and Collection of Wages Law, D.C. Code Ann. §§ 32-1301 *et seq.* ("DCPCWL"). *See generally* Compl. [Dkt. #1]. Defendants never answered the Complaint, and on July 1, 2013, plaintiff requested entry of default against all defendants. *See* Request for Entry of Default [Dkt. #5]. Plaintiff's request was granted on July 2, 2013. *See* Clerk's Entry of Default [Dkt. #6]. Thereafter, on plaintiff's motion, the Court entered default judgment in favor of plaintiff Montes in the amount of $67,180.27, and, in addition, for putative plaintiffs Victor Palma and

1

Sandra Zelaya in the amounts of $72,993.63 and $41,771.64, respectively.[1] *See* Am. Order & J. [Dkt. #11]. Presently before the Court is Defendants' Motion to Vacate Default Judgment and Motion to Dismiss as to Defendant Park for lack of jurisdiction. Defs.' Mot. to Vacate Default J. [Dkt. #24]; Def. Park's Mot. to Dismiss [Dkt. #24-6]; Mem. P. & A. Supp. Defs.' Mot. to Vacate Default J. and Def. Park's Mot. to Dismiss ("Defs.' Mem.") [Dkt. #24-1]. Upon consideration of the pleadings, the relevant law, and the entire record herein, the Court DENIES defendant Park's Motion to Dismiss, DENIES defendants' Motion to Vacate Default Judgment as to plaintiff Montes and GRANTS defendants' Motion to Vacate Default Judgment as to putative plaintiffs Palma and Zalaya only, and REFERS this case to a Magistrate Judge for a report and recommendation as the appropriate amount of attorney's fees to be granted for plaintiff Montes.

## ANALYSIS

Where, as here, the Court has rendered default judgment, the Court may only vacate its ruling pursuant to the rigorous standards set forth in Rule 60(b) of the Federal Rules of Civil Procedure. *See Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).[2] Rule 60(b) permits a court to relieve a party from a final judgment when "the judgment is void," or, in rare and extraordinary instances, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (6); *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S.

---

[1] The Court also granted attorney's fees and costs in the amount of $23,770.62. *See* Am. Order and J.
[2] It is important to "note that there is a distinction between the appropriate standard for setting aside a default and the appropriate standard for setting aside a default judgment." *Jackson*, 636 F.2d at 835. "A default can be set aside under rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders." *Id.*

847, 864 (1988). A defendant challenging a judgment as void under Rule 60(b)(1) "need show no meritorious claim or defense or other equities on his behalf." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987). Rather, in such circumstances, a defendant "is entitled to have the judgment treated for what it is, a legal nullity." *Id.* at 441-42. Defendants here raise three arguments that, if meritorious, render default judgment such a nullity. First, defendants contend that the Court lacked personal jurisdiction over defendant Park. Second, defendants claim that plaintiff failed to properly effect service. Third, and finally, defendants aver that the Court lacked subject matter jurisdiction to enter judgment in favor of putative plaintiffs Victor Palma and Sandra Zelaya. *See generally* Defs.' Mem. I begin with the issue of personal jurisdiction.

## I. Personal Jurisdiction

Post-hoc findings of jurisdictional defect are reserved for "the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citations omitted). Here, the Court has an ample basis for its jurisdiction.

There are two forms of personal jurisdiction: (1) general jurisdiction, which confers jurisdiction over a defendant who maintains "continuous and systematic" contacts with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984), and (2) specific jurisdiction, which confers jurisdiction over individual controversies "based on acts of a defendant that touch and concern the forum," *Steinberg v. International Criminal Police Organization*, 672 F.2d 927, 928 (D.C. Cir. 1981).

Specific jurisdiction has two additional requirements—first, that jurisdiction over the defendant be authorized by the forum's long-arm statute and second, that the ensuing exercise of jurisdiction "satisfy the federal requirement of constitutional due process." *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008).

Where, as here, an individual defendant neither resides within, nor maintains a principal place of business in the District, D.C.'s long-arm statute provides the sole basis for personal jurisdiction. Under this statute, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code. § 13-423(a)(1). Courts cannot, however, use this statute to "exert jurisdiction over individual corporate officers or employees just because the court has jurisdiction over the corporation" *unless* those officers are more than mere "employees of the corporation." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 84 (D.D.C. 2006) (citation and internal quotation marks omitted). Whether an individual is more than a mere corporate employee is a case specific inquiry. The weight of authority suggests, however, that an individual is likely to be more than a "mere employee" when he is a senior corporate officer who sets corporate policy and oversees daily operations. *See, e.g., Azamar v. Stern*, 662 F. Supp. 2d 166, 175 (D.D.C. 2009); *Nat'l Cmty. Reinvest. Coal. v. Novastar Fin., Inc.*, 631 F. Supp. 2d 1, 5-6 (D.D.C. 2009).[3] Defendant Park is one such employee.

---

[3] *But see D'Onofrio*, 534 F. Supp. 2d at 93 n.6 (finding the exception inapplicable where the corporate officers were "most certainly not the only corporate officers of their respective companies" and did not "control all aspects of the relevant corporations"); *Kopff*, 425 F. Supp. 2d at 85 (finding that this exception was inapplicable to a database manager who was neither a director nor an officer of the company and who, further, had no role in "directing or controlling company policy").

4

There is no dispute that, throughout the relevant period, JPI furnished janitorial services in the District of Columbia, and, moreover, that plaintiff was in JPI's employ when he rendered the services at issue. *See* Compl. ¶¶ 11, 13, 18, 19, 35. Where the parties differ is as to defendant Park's role at JPI. Plaintiff alleges that, in his capacity as "President and Chief Operating Officer of JPI," defendant Park had "the actual and apparent authority to bind and set wage and hour policies and practices for JPI" from at least 2003 to 2012. *See* Compl. ¶ 13. Defendant disagrees, and contends that there is no evidence defendant Park ever "*exercised* [his] authority." Defs.' Reply Mem. at 2 [Dkt. #30]. Please. As plaintiff points out, defendant Park admitted in a related case that he was not only the "owner of JPI," but that he also had the "authority to set JPI's wage and hour policies and practices." Mem. of Law in Supp. Pls.' Opp'n to Defs.' Mot. to Vacate Default J. & Mot. to Dismiss ("Pls.' Opp'n") [Dkt. #29] Ex. 3 ¶ 5 [Dkt. #29-3]. Nowhere, in either this action or in the related case, does defendant Park claim that his role was purely titular or that he somehow abdicated his authority. As such, I find it difficult to believe that defendant Park, as self-proclaimed owner, policy-maker, and Chief Operating Officer of JPI, failed to take an active role in the operation of his own business.[4] Thus, because defendant Park was, by his own admission, more than a "mere employee" of a corporation that availed itself of the privileges and responsibilities of

---

[4] Principles of equity prevent the Court from allowing defendant Park to minimize his role merely because it suits the "exigencies of the moment." *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (applying the doctrine of judicial estoppel to prevent a litigant from "deliberately changing positions according to the exigencies of the moment"); *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 124, n.6 (D.D.C. 2008) (applying the doctrine of judicial estoppel against a party who advanced different positions in related cases).

doing business in the District of Columbia, I find that the Court properly exercised personal jurisdiction over defendant Park.

## II. Service of Process

Nor will the Court countenance defendants' claim that default judgment is void because plaintiff failed to properly effect service. *See* Defs.' Mem. at 21-22. A plaintiff may effect service on an individual or corporation by personally delivering a copy of the complaint and summons. Fed. R. Civ. P. 4(e)(2)(A), (h)(1)(B). Plaintiff did so here. Two affidavits unequivocally state that defendant Park, in both his individual capacity and as the Registered Agent of JPI, was served with a civil summons and a copy of plaintiff's complaint at 2:24PM on June 6, 2013. *See* Romero Aff. [Dkt. #4]. Defendant Park now claims, however, that he was never served. *See* Park Decl. ¶ 11 [Dkt. #24-2]. The Court finds defendant Park's claim questionable, at best, and is not persuaded otherwise by the declarations of other JPI employees marshalled in support. Indeed, the declaration of JPI Manager Donald Garrett, who recalls, nearly a year and a half *after* the events in question, and with rather astonishing clarity, that Mr. Park was not, in fact, in the office on June 6, 2013, strains credulity. Garrett Decl. ¶ 11 [Dkt. #24-3]. More curious still is a third declaration, submitted by former JPI employee Jeffrey Lawson, averring that Mr. Park was not in the office on June 6, 2013 because had he been present, they "either would not have been exchanging e-mails about business matters that day," or, conversely, would have "been talking about the lawsuit." *See* Lawson Aff. ¶ 19 [Dkt. #28-1]. Mr. Lawson surmises that because he corresponded with defendant Park on June 6, 2013, and "[t]here were no e-mails about the lawsuit," service must not have occurred.

6

*Id.* The Court declines to adopt Mr. Lawson's speculative reasoning and, accordingly, finds no defect in service.[5]

### III. Subject Matter Jurisdiction

Defendants have more success with their final argument, namely, that the Court lacked subject matter jurisdiction to enter default judgment in favor of putative plaintiffs Palma and Zalaya. *See* Defs.' Mem. at 13-18, 23-24. The Court, upon careful consideration of this issue, agrees. The FLSA permits a named plaintiff to, as Mr. Montes attempted to do here, sue on "behalf of [himself] . . . and other employees similarly situated." *See* 29 U.S.C. § 216(b). Just because an action is styled as a "collective" action does not mean that it will be treated as such by the Court. The FLSA stipulates that no individual "shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Although our Circuit Court has yet to opine on this requirement, the overwhelming weight of precedent instructs that this is more than just a procedural technicality. Indeed, numerous courts interpret the FLSA "literally" to require that all parties wishing to join the action file written, and signed, consents stating their intent to participate as plaintiffs. This Court is aware of no appellate decision that dictates otherwise. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004); *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 7 (D.D.C. 2010) ("The scope of a

---

[5] In any event, in July 2013, roughly a month after service was purportedly rendered, Mr. Park wrote to plaintiff's counsel, referencing, with remarkable specificity, the "complaint filed" by Mr. Montes "seeking wages for hours worked under FLSA." Pl.'s Opp'n Ex. 7 [Dkt. #29-7]. It is therefore abundantly clear that defendant Park was on notice of this action around the time default was entered and, in any event, well before default judgment was rendered.

collective action for overtime pay is limited, however, in that putative class members must affirmatively opt in to the action in order to become part of the lawsuit."); *see also Mendez v. The Radec Corp.*, 260 F.R.D. 38, 52 (W.D.N.Y. 2009) ("In general, all that is required is a signed statement indicating the plaintiff's intent, and consent, to participate as a plaintiff in the collective action.").[6]  This approach is manifestly logical. Because a party to a collective action will be bound by the judgment entered therein, he should have the right to determine whether, and how, his rights will be adjudicated. For that reason, I join other courts in reading the statute as it is unambiguously worded: to require the written consent of each and every individual wishing to join.

Here, neither Palma nor Zalaya filed written consent to join this action. None of the docket entries cures this deficiency. Although plaintiff styled his Complaint as a collective action suit on behalf of two similarly situated, non-exempt employees, it fails to mention the other two employees by name, let alone provide their signatures. Rather, it states only that "[c]onsents to join the action have and continue to be executed by individuals who are similarly situated," but fails to elaborate on, or append, these documents. *See* Compl. ¶ 10. As other circuits have made clear, this oversight is fatal to plaintiff's argument. *See Harkins*, 385 F.3d at 1101 ("The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, *you're not a party*.") (emphasis added).  Indeed, the first time plaintiff Montes mentioned the two "similarly situated" employees by name was in a footnote of

---

[6] The version of the DCMWL in effect at the time of plaintiff's Complaint contained a nearly identical requirement that claims could not be brought as collective action claims unless each plaintiff filed "written consent" to become a party.  D.C. Code § 32-1012(b) (2001).

his Motion for Default Judgment. *See* Pls.' Mem. of P. & A. in Supp. of Mot. Requesting Default J. at 1 n.2 [Dkt. #8-1]. This passing reference suffers, however, the same flaw as the Complaint: it is unaccompanied by either Mr. Palma's or Ms. Zalaya's written consent to join. Plaintiff's argument that the "Court abrogated the need to" submit collective action consents by granting his request to include Mr. Palma and Ms. Zelaya in the case caption is erroneous. *See* Pl.'s Opp'n at 15. The FLSA is abundantly clear—a collective action simply cannot lie without the express consent of the individuals who wish to join.[7] Regrettably, because this requirement was not met, the Court lacked subject matter jurisdiction to enter relief in either Mr. Palma's or Ms. Zalaya's favor. Although the Court leaves the judgment in favor of plaintiff Montes undisturbed, it will, in accordance with Rule 60(b)(1), vacate the default judgments entered in favor of Mr. Palma and Ms. Zalaya.[8]

## CONCLUSION

Thus, for the foregoing reasons, the Court DENIES defendant Park's Motion to Dismiss, GRANTS in part and DENIES in part defendants' Motion to Vacate Default Judgment and REFERS this case to a Magistrate Judge for a Report and

---

[7] Plaintiff's argument that his claim under the DCWPCL can survive notwithstanding this failure is, unfortunately, incorrect. As plaintiff correctly points out, the DCWPCL does not require that plaintiffs affirmatively "opt-in" to a collective action to reap the benefits of a judgment. *See* D.C. Code § 32-1308. However, where, as here, a plaintiff styles his request for relief under the DCWPCL as a class action, damages only inure to a class that has obtained class certification pursuant to Federal Rule of Civil Procedure 23(c). *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006) ("Federal courts may only adjudicate the rights of putative class members upon certification of that class under Federal Rule of Civil Procedure 23."). In the absence of a formal class certification, neither Mr. Palma nor Ms. Zalaya may be considered "class members" and are therefore not entitled to share in the default judgment.

[8] The Court, however, renders no judgment as to whether any portion of Mr. Palma's or Ms. Zalaya's claims are time-barred under the applicable statute of limitations.

Recommendation as to the proper amount of attorney's fees to be awarded in favor of plaintiff Marcos Montes in light of this Court's decision. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge